IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68058-7-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER LEIGH YOUDE, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: May 20, 2013 |
| | ) | |

BECKER, J. — This case involves a prosecution for delivery of marijuana. The investigating agency was the police department of the Tulalip Tribes. The Tribes asserted sovereign immunity in response to a defense subpoena for information the Tribes deemed immaterial. Recognizing that a sovereign entity is not subject to compulsory process, the superior court quashed the subpoena. The court then granted the defendant's motion to dismiss the prosecution under CrR 8.3(b). The State appeals the dismissal. We hold the court abused its discretion by dismissing the case without first determining whether the subpoenaed information was material. Because the record does not support a finding of materiality, we reverse the order of dismissal.

Jennifer Youde advertised on Craigslist, an online forum for goods and services, as a seller of medical marijuana. Detective Wayne Schakel, an undercover police officer of the Tulalip Tribes, responded to the ad by requesting a delivery. Youde delivered marijuana to him on February 6, 2010, and was immediately arrested by tribal officers. The arrest occurred on the Tulalip Indian Reservation. Youde's car was searched and seized pursuant to a warrant issued by the tribal court. The Tribes later forfeited Youde's car pursuant to tribal law.

"Indian tribal courts do not have inherent jurisdiction to try and punish non-Indians who commit crimes on their land. Instead, criminal offenses occurring on a reservation by non-Indians are subject to prosecution by state or federal governments, depending on the offense." State v. Schmuck, 121 Wn.2d 373, 379, 850 P.2d 1332 (citation omitted), cert. denied, 510 U.S. 931 (1993). Because Youde is non-Indian, Detective Schakel referred the criminal charge of possession of a controlled substance to the Snohomish County Prosecutor to make a charging decision.

On March 11, 2011, the State filed an information in Snohomish County Superior Court charging Youde with delivery of a controlled substance, a felony. The Tulalip Police Department was listed in the information as the "originating agency."

Detective Schakel is cross commissioned with the Snohomish County Sheriff's Department, the Federal Bureau of Investigation, and the United States

Marshal. According to Detective Schakel's declaration, the investigation began in January 2010, after Tulalip Police received a tip that someone was selling drugs on the reservation and advertising on Craigslist.

Detective Schakel, who was asked to follow up on the tip, found an ad on Craigslist posted by Youde. The advertisement was captioned, "Need Medical MJ? -- $420 (Mt Vernon to Olympia)." The advertisement read in part:

> If you use medical marijuana and would like a competent, friendly delivery, please email me. I deliver anywhere between Arlington and Olympia two to four times a week. . . . I don't mind meeting in a convenient place for you. Medicine is free. Donation is accepted for my time. Donation request listed below. I will never short you on your meds.

Detective Schakel contacted Youde with an e-mail that said, "Just saw your ad, are you delivering today? I'd like to try some Kush for a change. What are your donation rates?" Youde suggested a meeting in Marysville. After several exchanges of e-mails, the meeting eventually occurred on February 6, 2010, near a bank in Marysville that is located on the Tulalip Reservation. Youde handed the undercover officer six grams of marijuana in exchange for $90, without making any effort to verify that he was qualified as a medical user. This exchange was the basis for the charge of delivery.

On August 10, 2011, Youde filed a request for discovery from the Tribes pursuant to CrR 4.7(d). This section of the criminal discovery rule sets forth the prosecutor's responsibility to assist a defendant in obtaining material held by others which "would be discoverable if in the prosecutor's control." The request

3

asked the Snohomish County Prosecutor to attempt to obtain (1) the telephonic application for the search warrant, (2) Tulalip police department policies regarding "buy/bust" operations in general, and "specifically the targeting of individuals who provide medical marijuana," and (3) written and electronic communications among members of the tribal police department, and between members of that department and the Tribes' legal department, "in regards to medical marijuana and its status on tribal lands."

The prosecutor was unable to obtain the requested materials. On August 26, 2011, on Youde's motion and without opposition from the State, the trial court issued a subpoena duces tecum for the requested materials, directed to the Tribes' legal representative.

Through their prosecutor, the Tribes formally objected that there were no materials responsive to the first and second parts of the request. The Tribes said that the audio recording of the telephonic warrant application was no longer available due to an office relocation in the summer of 2010, and the only police department policy regarding "buy/bust" operations pertained to the use of confidential informants.

As to the third category in the subpoena, the Tribes objected to the production of attorney-client privileged communications and further objected that the production of internal law enforcement communications was unduly burdensome, likely to compromise other police investigations, and unlikely to

4

lead to admissible evidence. In addition, and of chief significance to this case, the Tribes objected that the request "exceeds the scope of permitted discovery under CrR 4.7 and fails to meet the discretionary disclosure standards of materiality under Cr.R 4.7(e)(1)."

Responding to the Tribes' objections, Youde explained why she viewed the requested information as material. She said she was considering asserting a "somewhat hybrid defense" combining elements of the medical marijuana statute and entrapment. She explained that under the statute as it existed at the time of her arrest, a person acting as a "designated provider" of medical marijuana could not be found guilty of a crime for assisting a "qualifying patient" with the medical use of marijuana. See former RCW 69.51A.005 (2007). Because the undercover officer was not in reality a qualifying patient, Youde conceded she could not rely solely on the statute to show she was not guilty of a crime. Instead, she explained, she might have to rely upon an entrapment defense. That is, she would show that she would not have provided medical marijuana to the officer "in the absence of her belief that he was a medical marijuana patient requesting that she be a provider of medical marijuana, actions that are legal in Washington State." Youde hypothesized that the Tribes deliberately lured her onto tribal lands so she would not have the protection afforded by state law to providers of medical marijuana:

> In this case the Tulalip Tribe, a sovereign nation, elected to target an individual who was acting within the laws of our state, lure her

onto Tribal Lands, and then arrested her and seized and forfeited her car. In presenting a defense of entrapment, the defendant must be allowed to investigate whether the Tulalip Police acted to specifically target medical marijuana providers and what motivated such action.

It was the Tribe that chose to seek out a medical marijuana provider and use subterfuge in an attempt to either push that provider's conduct outside the protections of the Medical Marijuana statute or, perhaps, in an effort to bring that provider onto tribal lands, where the tribe may believe Washington's Medical Marijuana laws have no power. That is why it is not only communications between members of the Tribal Police Department, but also the Tribal Legal Department, that are relevant to the defense in this case, and must be disclosed.

On September 23, 2011, the superior court held a hearing on the Tribes' objections to the subpoena. With respect to the internal communications requested in the third part of the subpoena, the Tribes argued that an entrapment defense would not be viable given the facts of the case. The Tribes acknowledged making no effort to determine whether or not documents responsive to the subpoena existed because the information was considered by the Tribes to be immaterial. Finally, the Tribes stated that if the court ruled that the information sought was material and the Tribes was obliged to produce it, the Tribes was reserving the right to assert sovereign immunity:

> the Tribes has not made an effort to determine if these documents exist because the documents are so far outside the scope of what is material under 4.7 that there should be no obligation to do so.
> And, your Honor, I think it's important to articulate for the court that the Tribes, particularly through the police department, wants to ensure that the Snohomish County Prosecutor's Office is able to meet all of its legal and ethical obligations under 4.7. And all the discovery that the department has was provided through the prosecutor's office in the normal course.

6

. . . .
Now there's an additional issue that I'd like to reserve time to address should the court take the position that there's -- that there is a basis to respond to this subpoena, that the materials sought are not only material, but ones that the Tribes has an obligation to answer, and that argument is based on the principle of immunity. But I would simply reserve that issue at this time and address it should it be necessary with the court.

The court asked for supplemental briefing on sovereign immunity. The Tribes first repeated the argument that the information sought was immaterial but argued alternatively that the subpoena should be quashed in its entirety because the court lacked jurisdiction over the Tribes. The Tribes asserted that the Tulalip Tribal Court was the court with jurisdiction to issue such a subpoena.

Youde argued she had a constitutional right to investigate possible defenses and the requested materials were within the scope of discovery. She also contended the Tribes had implicitly waived sovereign immunity by entering into a cooperative law enforcement agreement with Snohomish County.

On October 10, 2011, after reviewing the cooperative agreement, the superior court issued an order quashing the subpoena. The court concluded the Tribes had not waived sovereign immunity: "Nowhere in this agreement do the Tribes either expressly or implicitly waive their right to control the policies and procedures of either their Police agency or Legal Department. . . . The mere fact that the Tribes and the County have chosen to share jurisdiction of the prosecution of crimes does not confer any implied waiver of sovereign immunity on the part of the Tribes." The court found that the Tribes' invocation of

7

sovereign immunity was "dispositive of the issues before the Court. . . . Because the Tribes have successfully invoked sovereign immunity, there is no need to address any of the other issues raised by either party."

The order quashing the subpoena on the basis of sovereign immunity has not been appealed. It is well established that a waiver of sovereign immunity must be unequivocally expressed; it cannot be implied. E.g., United States v. Testan, 424 U.S. 392, 399, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976).

On November 15, 2011, Youde filed a motion to dismiss pursuant to CrR 8.3(b). She maintained that the information sought was material to a potential defense of entrapment. She said, "The State may argue that Ms. Youde is not going to prevail on an entrapment defense. But that is entirely beside the point, as Ms. Youde is being prevented from even investigating that defense." The State responded that the assertion of sovereign immunity was not arbitrary action or governmental misconduct and that the extraordinary remedy of dismissal should not be granted because Youde had failed to show material prejudice to her right to a fair trial.

On November 18, 2011, the court heard arguments on the motion to dismiss. In an oral ruling granting the motion, the court concluded that allowing the State to proceed in the face of an assertion of sovereign immunity by the investigating agency would violate due process and deny Youde the opportunity to develop a defense:

> [Tribal police] requested that the State prosecute her as a Washington State case. The alternative would have been to seek prosecution by the US Attorney in Federal Court.
>
> The Tribes had a choice here of providing the information necessary to this defense so the defense could determine if it had an affirmative defense to the case. They didn't do that. Instead, they asserted sovereign immunity.
>
> I think then it becomes a constitutional issue, a due process issue here. It rises to constitutional levels. I think it's a violation of due process here at this point to allow the State to proceed when the Tribes who developed the case and requested prosecution has asserted sovereign immunity as a reason not to provide the requested discovery.
>
> At the same time, I think it's denial of effective assistance of counsel if counsel can't then build his defense or seek to build a defense in this case because the Tribes has denied them.

The order of dismissal was consistent with the oral ruling: "It is hereby ordered that the assertion of sovereign immunity by the investigating law enforcement agency is equivalent to governmental misconduct as it denies due process and effective assistance of counsel, and the motion is granted and case dismissed."

The State appeals the order of dismissal. The State contends dismissal was unwarranted because Youde did not articulate a material basis for her request for the Tribes' internal communications. Youde responds that the "selective invocation of sovereign immunity" by the Tribes short-circuited her right to investigate a possible defense.

CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affects the accused's right to a fair trial. The court shall set forth its reasons in a written order.

The trial court's power to dismiss is discretionary and is reviewable only for manifest abuse of discretion. Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons. State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

The State contends the court abused its discretion because Youde has shown neither (1) arbitrary action or governmental misconduct, nor (2) prejudice affecting her right to a fair trial.

The assertion of sovereign immunity by an investigating agency in a criminal case is not unique to tribes. A state court cannot enforce a state subpoena issued to an agent of the Federal Bureau of Investigation, for example, even if the withholding of the information means the state court must then grant a defendant's motion to dismiss. F.B.I. v. Superior Ct. of Cal., 507 F. Supp. 2d 1082, 1087-88, 1094 (2007). For the purpose of our analysis under CrR 8.3(b), we will assume the terms "arbitrary action" and "governmental misconduct" are appropriate labels for the State's insistence on proceeding with a prosecution despite the refusal by another sovereign to disclose material information.

But Youde has cited no cases, and we have found none, where a dismissal has been affirmed because a police agency—with or without sovereign immunity—defies a subpoena for information that is immaterial. Under CrR 8.3(b), the accused must show material prejudice before a motion to dismiss is

10

granted. To establish a right to discovery, a defendant "must advance some factual predicate which makes it reasonably likely the requested file will bear information material to his or her defense." Blackwell, 120 Wn.2d at 830.

The trial court went straight to constitutional issues without ruling on the materiality of the request for the Tribes' internal communications. In part, the court reasoned that it is fundamentally unfair for an investigating agency of another sovereign to submit a case for prosecution without waiving sovereign immunity. ("I think it's a violation of due process here at this point to allow the State to proceed when the Tribes who developed the case and requested prosecution has asserted sovereign immunity as a reason not to provide the requested discovery.") We have found no authority in the criminal rules or elsewhere for holding that a criminal case must be dismissed whenever sovereign immunity is asserted by the entity that developed the case or requested prosecution.

The more substantial question is whether the State violated Youde's constitutional rights by exposing her to continued prosecution under circumstances where the court could not protect her right to compulsory process.

The right to compulsory process is "in plain terms the right to present a defense . . . . This right is a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The right to effective assistance of counsel is guaranteed by the Sixth

11

Amendment. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Effective assistance of counsel includes an attorney's duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In re Pers. Restraint of Davis, 152 Wn.2d 647, 721, 101 P.3d 1 (2004). "The defendant's interest in fully investigating every possible defense to the charges leveled against him is not to be lightly denied." State v. Gonzalez, 110 Wn.2d 738, 748, 757 P.2d 925 (1988). Generally speaking, the scope of discovery under the criminal rules is within the trial court's sound discretion. State v. Yates, 111 Wn.2d 793, 798, 765 P.2d 291 (1988). The trial court is to regulate discovery in a manner which will insure a fair trial to all concerned. Yates, 111 Wn.2d at 799.

We do not hesitate to say that a trial court's decision to dismiss a criminal prosecution would be upheld in accord with these principles where, by an assertion of sovereign immunity, a defendant was prevented from obtaining material information in the hands of a third party not subject to the court's power. Indeed, the State acknowledges that the assertion of sovereign immunity can justify dismissal of a criminal case if it prevents the defendant from receiving a fair trial. A violation of the defendant's constitutional right to counsel and the right to compulsory process is presumed to be prejudicial. State v. Burri, 87 Wn.2d 175, 181, 550 P.2d 507 (1976). If Youde had stated a predicate for the possible materiality of the files, and the Tribes had declined to provide them at least for in

camera review, dismissal would be justified. An accused cannot be left to defend herself in a court that is unable to enforce discovery orders for material information.

The problem for Youde is that she has not stated a predicate for the possible materiality of the files. She contends the materiality of the requested items was conclusively settled when the court issued a subpoena for them and the State did not object. But she cites no authority for the proposition that the State must object to a subpoena at the time a court issues it in order to preserve the issue of materiality. The issuance of the subpoena did not estop the trial court from reconsidering the materiality of the requested information once the Tribes objected to producing it. The State timely argued the requested discovery was immaterial in connection with the motion to dismiss.

Youde claimed below that the requested information was relevant to a "somewhat hybrid" defense involving both the medical marijuana statute and the affirmative defense of entrapment. She did not spell out how a jury would be instructed on such a defense. On appeal, she argues only that her investigation was aimed at a potential defense of entrapment.

The defense of entrapment is provided by statute:

> (1) In any prosecution for a crime, it is a defense that:
> (a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
> (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

13

(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

RCW 9A.16.070.

Youde suspects the police set up the transaction to occur on tribal land because they believed a delivery of marijuana would be illegal there even if it would be innocent elsewhere in Washington under the medical marijuana statute. It is possible the requested materials would reveal such a belief. Possibly, the Tribes' internal communications would even document a deliberate scheme of arranging for sellers to make deliveries in a location where the Tribes would have jurisdiction to initiate forfeiture actions. We therefore will assume the subpoenaed information could be material to the first prong of an entrapment defense: that the idea of steering Youde to a particular location was a design that "originated in the mind" of tribal law enforcement officials.

However, on this record, Youde fails to demonstrate any possibility of proving that the subpoenaed information could be material to the second prong: that tribal police lured or induced her to commit a crime she had no intention of committing. Where the police merely give a defendant an opportunity to commit a crime by employing a ruse, entrapment is not established. RCW 9A.16.070; State v. Smith, 93 Wn.2d 329, 350, 610 P.2d 869, cert. denied, 449 U.S. 873 (1980). Delivering marijuana was plainly Youde's intention. The undercover operation, through a ruse, merely gave her an opportunity to deliver it.

14

On this record and at this point in the case, there is no reason to believe that the gap in proof of the second prong of an entrapment defense would be filled by information about the motives or beliefs that led tribal law enforcement to target sellers like Youde. Therefore, we conclude the requirement of materiality in CrR 8.3(b) was not satisfied when the court granted the motion to dismiss.

Following Blackwell, we hold that a trial court must determine that requested discovery is material before granting a motion to dismiss based on the unavailability of compulsory process. Here, the trial court did not make that determination. And the record lacks a colorable showing by Youde that the requested materials could make entrapment a viable defense. We conclude the State may proceed with the prosecution of Youde.

The order of dismissal is reversed.

Becker, J.

WE CONCUR:

Spearman, A.C.J.

Cox, J.

15