

**FILED**
**MARCH 17, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37374-6-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 37822-5-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DERRICK STEPHEN HANEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Derrick Haney appeals the validity of his plea and sentence for three counts of second degree rape of a child. We affirm.

## FACTS

The State charged Derrick Stephen Haney with three counts of rape of a child for acts he committed in 2012 against his 12-year-old stepdaughter. Approximately two months after being charged, Mr. Haney appeared with his attorney, Larry Zeigler, for a change of plea hearing. The parties advised the court that Mr. Haney was pleading to the three pending charges in exchange for dismissal of the "position of trust" aggravators and

assurance that a neighboring county would not file additional charges. Mr. Haney entered a plea pursuant to the agreement.

Before sentencing, the defense filed a typewritten motion to withdraw the plea. Although Mr. Zeigler filed the motion, his analysis contained only legal authority and no application of law to Mr. Haney's case. Mr. Zeigler also indicated "pro se" on the motion itself. Clerk's Papers (CP) at 19. Included with the motion was a handwritten statement from Mr. Haney, listing Mr. Haney's reasons for wanting to withdraw his plea. The list of reasons focused primarily on Mr. Haney's asserted innocence and requests for lenience. However, Mr. Haney also criticized his attorney for not obtaining a psychological evaluation and for notifying his mother about the State's plea offer.

Subsequent to his attorney filing the motion to withdraw the plea, Mr. Haney filed a handwritten motion for new counsel. According to Mr. Haney, he had not authorized Mr. Ziegler to file the motion to withdraw the plea. He claimed he instead wanted Mr. Ziegler to file a motion for new counsel. As part of his justification for new counsel, Mr. Haney cited Mr. Ziegler's communication with his mother and attorney-client disagreements that had arisen postplea. Mr. Haney's motion asked the court to appoint new counsel and to provide sufficient time for a new attorney to review his case before acting on the motion to withdraw the plea.

2

The trial court took up Mr. Haney's motions on the date scheduled for sentencing. The court first heard from Mr. Haney on his request for new counsel. Mr. Haney outlined his concerns regarding Mr. Ziegler and then Mr. Ziegler provided his response. The court denied the motion for new counsel, finding Mr. Haney had not asserted "a basis to remove Mr. Zeigler from this case." 1 Report of Proceedings (RP) (Oct. 18, 2012) at 20.

The court then heard from Mr. Haney on his request to withdraw the plea. Mr. Haney claimed Mr. Zeigler provided ineffective assistance during plea negotiations by refusing to investigate potential psychological issues and by refusing to answer questions regarding DNA (deoxyribonucleic acid) evidence. After approximately 10 to 15 minutes, Mr. Ziegler interjected that he wished Mr. Haney had kept his comments shorter because he did not want to go into detail regarding his response. Mr. Ziegler then explained why he had provided Mr. Haney effective representation and why he recommended a guilty plea. Mr. Ziegler concluded his comments by noting Mr. Haney appeared to have "buyer's remorse." *Id*. at 28. The court then heard from the State and Mr. Haney's final arguments. The court subsequently denied Mr. Haney's motion to withdraw his plea.

The trial court then sentenced Mr. Haney to a high-end indeterminate sentence of 194 months to life in prison, along with several community custody conditions.

In October 2019, Mr. Haney filed a postjudgment motion challenging several of his community custody conditions. The trial court entered an order providing partial relief. In December 2019, Mr. Haney appealed the trial court's order. Mr. Haney subsequently obtained an order from this court's commissioner, allowing him to appeal his underlying judgment and sentence based on the State's failure to prove Mr. Haney had been advised of the right of appeal at the time of the 2012 sentencing. Both appeals were consolidated and then submitted to a panel of this court for consideration without oral argument.

ANALYSIS

*Right to counsel*

Mr. Haney argues his judgment and sentence must be reversed because he was deprived of his constitutional right to counsel during the trial court's adjudication of his motion to withdraw his plea. Mr. Haney does not challenge the trial court's denial of his motion for substitute counsel. Nor does he argue the merits of his motion to withdraw his plea. He instead claims that the manner in which the court conducted the hearing on the motion to withdraw his plea amounted to a constructive deprivation of the constitutional right to counsel.

We review a constitutional denial of counsel claim de novo, though we accord deference to the trial court's determination of applicable facts. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

The lone authority cited by Mr. Haney in support of his deprivation of counsel claim is *State v. Harell*, 80 Wn. App. 802, 911 P.2d 1034 (1996). In *Harell*, the defendant moved to withdraw his plea prior to sentencing, alleging ineffective assistance of counsel. At a hearing on the motion to withdraw, the trial court determined the defendant had made a prima facie case of ineffective assistance, ordered the attorney-client privilege had been waived, and allowed defense counsel to testify against the defendant as a witness for the State. The court did not appoint substitute counsel to represent the defendant at the hearing. It then denied the defendant's motion to withdraw his plea.

Division One of this court reversed. In so doing, we recognized that a motion to withdraw a plea is a critical stage of a criminal prosecution. *Id*. at 804. As such, the defendant had a right to assistance of counsel at a plea withdrawal hearing. Because Mr. Harell was forced to proceed without the assistance of counsel at his plea withdrawal hearing, we determined his conviction must be reversed. *Id*. at 805.

5

Understanding what happened in *Harell* requires some unpacking. When a defendant asserts they have been prejudiced by ineffective assistance of counsel, the trial court must conduct a two-step inquiry. First, the court must assess whether the defendant has made a prima facie case of ineffective assistance. *See id.* at 804. A defendant cannot "force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel." *State v. Stark*, 48 Wn. App. 245, 253, 738 P.2d 684 (1987). Instead, the defendant must allege sufficient facts to warrant a hearing on the issue. *Harell*, 80 Wn. App. at 804. If a defendant establishes a prima facie case, the second step is for the court to appoint new counsel and hold a hearing on the merits of whether the defendant has been prejudiced by the attorney's deficient performance. *See id.* at 804-05.

Here, Mr. Haney never got past the first step. Mr. Haney did not allege sufficient facts to establish a prima facie case of ineffective assistance. Thus, the trial court lacked a basis to remove Mr. Zeigler as counsel. We acknowledge Mr. Zeigler did not argue in support of Mr. Haney's request to withdraw his plea. This was his prerogative, as lawyers are prohibited from arguing motions that lack a basis in law or in fact. *See* RPC 3.1. The trial court likely did not need to allow Mr. Haney to present his position regarding

6

withdrawal of the plea. But given Mr. Haney asked to go forward, the trial court acted within its discretion in deciding to give time to Mr. Haney.

Mr. Haney may have complaints about the representation provided by Mr. Zeigler, but this does not mean he was forced to appear unrepresented. Mr. Zeigler never testified against Mr. Haney and Mr. Zeigler continued to represent Mr. Haney through sentencing. Mr. Haney was not deprived of his right to counsel at a critical stage of the prosecution.

*Community custody conditions*

Mr. Haney challenges two discretionary community custody prohibitions imposed under RCW 9.94A.703(3)(f). We review the trial court's imposition of community custody conditions for abuse of discretion, keeping in mind that legal issues are assessed de novo. *See State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

*Condition 5*

Mr. Haney argues community custody condition 5 unconstitutionally restricts his contact with his biological children. The condition reads as follows:

> Have no contact with any minors to include biological, unless first approved by your therapist and then your Community Corrections Officer. In case of approved contact, it shall be only in the presence of an adult who has received prior approval from the therapist and Community Corrections Officer. The sponsor must be aware of offense behavior.

CP at 91.

7

Parents have a fundamental constitutional right to raise their children without State interference. *See In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21 (1998). But like all constitutional liberties, this right is not absolute. *See State v. Geyer*, 19 Wn. App. 2d 321, 327, 496 P.3d 322 (2021). The State may restrict a parent's access to their children as a condition of sentencing, so long as it does so in a way that is sensitively tied to the State's legitimate interests. *State v. Torres*, 198 Wn. App. 685, 689, 393 P.3d 894 (2017).

The parental restrictions imposed on Mr. Haney pass constitutional muster. Given Mr. Haney sexually assaulted his stepdaughter, the State has a compelling interest in protecting other similarly-situated children from Mr. Haney, including his own biological children. *State v. Corbett*, 158 Wn. App. 576, 599, 242 P.3d 52 (2010). The court's restrictions on Mr. Haney's contact with his children were sufficiently sensitive. Condition 5 does not completely prohibit Mr. Haney's contact with his children. It instead regulates contact in a way that is supervised and consistent with therapeutic goals. We recognize it would have been preferable for the trial court to explain how it balanced Mr. Haney's right to parent against the State's compelling interests in public safety. *See Torres*, 198 Wn. App. at 690. Nevertheless, we find no abuse of discretion on the current record.

*Condition 11*

Mr. Haney also challenges community custody condition 11, which prohibits him from attending X-rated movies, peep shows, and adult book stores. According to Mr. Haney, this condition is unconstitutionally vague and overbroad.

A community custody condition is impermissibly vague if it is so imprecise that a reasonable person would not understand what is prohibited or that it is susceptible to discriminatory enforcement. *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). Here, the trial court's restrictions on access to X-rated movies, peep shows, and adult bookstores is consistent with conditions that have been previously held to pass constitutional muster. *State v. Casimiro*, 8 Wn. App. 2d 245, 250, 438 P.3d 137 (2019). We discern no reasonable risk of misunderstanding regarding what areas are contemplated by the restriction. The condition is not impermissibly vague.

Mr. Haney also asserts that condition 11 is not crime related as contemplated by RCW 9.94A.703(3)(f). We disagree. Mr. Haney committed sex crimes against a child and "in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,'" such as what is made

available through X-rated movies, peep shows and adult book stores. *Hai Minh Nguyen*,

191 Wn.2d at 686. The restrictions set forth in condition 11 are sufficiently crime related.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In a pro se statement of additional grounds for review (SAG), Mr. Haney claims

the trial court committed judicial misconduct by altering the terms of his plea agreement

and relatedly failing to invite him to withdraw his plea. We disagree.

At the heart of Mr. Haney's SAG is the trial court's correction of a misstatement

on his change of plea form. The plea form originally stated Mr. Haney's maximum term

of imprisonment was 10 years. During the plea colloquy, the court pointed out that the

maximum term was actually an indeterminate sentence of life. The parties agreed. The

court then noted the correction on the plea form. It also ensured Mr. Haney understood

the maximum term of incarceration before accepting Mr. Haney's plea.

The court did not alter the terms of Mr. Haney's plea agreement by correcting a

misstatement as to the maximum term of imprisonment. A plea agreement enables the

parties to negotiate the crimes of conviction and sentencing recommendations. However,

a plea agreement is powerless to alter the legislature's choices regarding maximum terms

of imprisonment. A trial court can and should ensure that a defendant pleading guilty has

an accurate understanding of the maximum term of incarceration. CrR 4.2(d). Doing so is

necessary to ensuring a valid plea; it does not constitute improper involvement in plea negotiations.

Because the court corrected the maximum term of incarceration before accepting Mr. Haney's plea, Mr. Haney fails to show that his plea was involuntary. We reject the assignments of error set forth in Mr. Haney's SAG.

## CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

11